IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| DANIEL OSTRANDER, | § | |
| Plaintiff, | § § § | |
| v. | § § | 6:13-cv-360-RP |
| HAROLD KOSTECK, *et al.*, | § § § | |
| Defendants. | § | |

## ORDER

Before the Court is Defendants' Renewed Motion for Judgment as a Matter of Law. (Dkt. 199). Having reviewed Defendants' motion, Plaintiff's response, the relevant case law, and the evidence and testimony at trial, the Court issues the following order.

## I. BACKGROUND

Plaintiff Daniel Ostrander filed this suit under 42 U.S.C. § 1983, alleging violations of his civil rights during his incarceration at the Hughes Unit of the Texas Department of Criminal Justice ("TDCJ"). A jury trial was held June 19 through 22, 2017. Plaintiff's claims of excessive force and retaliation against Defendants Harold Kosteck, John Kelly, Kenneth Taylor, Michael Kluck, Robert Preston, and Michael Yarbrough were sent to the jury. The jury issued the following verdict:[1]

**Jury Question No. 1**

Do you find that the Plaintiff proved, by a preponderance of the evidence, that on September 26, 2012, Defendants Preston or Yarbrough used excessive force against Plaintiff Daniel Ostrander?

Defendant Preston: No
Defendant Yarbrough: Yes

**Jury Question No. 2**

---

[1] The Court omits the instruction included in the verdict form regarding how to answer questions and which questions should be answered in light of earlier responses. It also omits any questions that the jurors, based on those instructions, did not answer. (*See* Dkt. 184).

Do you find that the Plaintiff proved, by a preponderance of the evidence, that the Defendants Preston and Yarbrough used force against Plaintiff Daniel Ostrander on September 26, 2012, for the purpose of retaliating against him for the exercise of his First Amendment right to complain to prison officials?

Defendant Yarbrough: No

**Jury Question No. 3**

Do you find that the Plaintiff proved, by a preponderance of the evidence, that on November 22, 2012, Defendants Preston or Taylor used excessive force against Plaintiff Daniel Ostrander?

Defendant Preston: No
Defendant Taylor: No

[Jury Question No. 4 omitted. *See supra* note 1.]

**Jury Question No. 5**

Do you find that the Plaintiff proved, by a preponderance of the evidence, that on November 29, 2012, Defendants Preston, Kosteck, Kelly, or Kluck used excessive force against Plaintiff Daniel Ostrander?

Defendant Preston: No
Defendant Kosteck: Yes
Defendant Kelly: Yes
Defendant Kluck: No

**Jury Question No. 6**

Do you find that the Plaintiff proved, by a preponderance of the evidence, that the Defendants Preston, Kosteck, Kelly, or Kluck used force against Plaintiff Daniel Ostrander on November 29, 2012, for the purpose of retaliating against him for the exercise of his First Amendment right to complain to prison officials?

Defendant Kosteck: Yes
Defendant Kelly: Yes

**Jury Question No. 7**

Do you find that the Plaintiff proved, by a preponderance of the evidence, that the Defendants filed false disciplinary charges against him, for the purpose of retaliating against him for the exercise of his First Amendment right to complain to prison officials?

Defendant Taylor in Disciplinary Case #20130036354: Yes
Defendant Preston in Disciplinary Case #20130036354: Yes
Defendant Kluck in Disciplinary Case #20130090963: Yes

**Jury Question No. 8**

Do you find that the Plaintiff proved that he fully exhausted his administrative remedies with regard to his claims of retaliation in the form of false disciplinary charges, by completing both steps of the TDCJ grievance procedure, as required by the Prison Litigation Reform Act?

Disciplinary Case #20130036354: Yes
Disciplinary Case #20130090963: Yes

**Jury Question No. 9**

Do you find that the Plaintiff proved, by preponderance of the evidence, that the Defendants' actions were objectively unreasonable in light of the facts and circumstances at the time, so as to overcome the Defendants' qualified immunity?

Defendant Yarbrough: Yes
Defendant Kosteck: Yes
Defendant Kelly: Yes
Defendant Preston: Yes
Defendant Taylor: Yes
Defendant Kluck: Yes

**Jury Question No. 10**

What amount of money, if any, paid now in cash, do you find that the Plaintiff proved by a preponderance of the evidence would reasonably compensate him for actual damages caused by the Defendant(s) in violation of Plaintiff Daniel Ostrander's constitutional rights?

Defendant Preston: $1,500.00
Defendant Yarbrough: $500.00
Defendant Taylor: $250.00
Defendant Kosteck: $1,000.00
Defendant Kelly: $750.00
Defendant Kluck: $1,000.00

### Question No. 10

Do you find, by a preponderance of the evidence, that one or more Defendants acted with malice or with reckless indifference to the rights of others?

Defendant Preston: Yes
Defendant Yarbrough: Yes
Defendant Taylor: Yes
Defendant Kosteck: Yes
Defendant Kelly: Yes
Defendant Kluck: Yes

### Question No. 11

What sum of money has Plaintiff Daniel Ostrander proved by a preponderance of the evidence should be assessed against each Defendant as punitive damages?

Defendant Preston: $1,500.00
Defendant Yarbrough: $500.00
Defendant Taylor: $250.00
Defendant Kosteck: $1,000.00
Defendant Kelly: $750.00
Defendant Kluck: $1,000.00

(Dkt. 184).

Following trial, on July 18, 2017, Defendants submitted the renewed motion for judgment as a matter of law and motion for a new trial presently before the Court. In that motion, Defendants assert that the evidence at trial was legally insufficient to support the jury's verdict on the following claims:

1. Excessive force by Defendant Kelly on November 29, 2012. (*See* Jury Question No. 5).

2. Retaliation by Defendant Kosteck in the form of excessive force on November 29, 2012. (*See* Jury Question No. 6).

3. Retaliation by Defendant Kelly in the form of excessive force on November 29, 2012. (*See* Jury Question No. 6).

4. Retaliation by Defendant Preston in Disciplinary Case #20130036354. (*See* Jury Question No. 7).

5. Retaliation by Defendant Kluck in Disciplinary Case #20130090963. (*See* Jury Question No. 7).

6. All claims for punitive damages. (*See* Jury Question No. 10).

(*See* Defs.' Mot., Dkt. 199, at 1–2). Plaintiff responds that the evidence at trial was sufficient to support the jury's verdict on each of these claims. (Pl.'s Resp., Dkt. 103).

## II. STANDARD OF REVIEW

If a party makes a motion for judgment as a matter of law during trial, but the court does not grant the motion, the moving party may renew its motion no later than twenty-eight days after the entry of judgment. Fed. R. Civ. P. 50(b). If a court finds that, considering all of the evidence proffered, "a reasonable jury would not have a legally sufficient evidentiary basis" to find in favor of a party on an issue or claim, the court may resolve the issue against the party and grant a motion for judgment as a matter of law. Fed. R. Civ. P. 50(a)(1).

In considering a Rule 50(b) motion for judgment as a matter of law following a jury verdict, the court must be "especially deferential" to the jury's findings. *SMI Owen Steel Co., Inc. v. Marsh USA, Inc.*, 520 F.3d 432, 437 (5th Cir. 2008). It should "consider all of the evidence, drawing all reasonable inferences and resolving all credibility determinations in the light most favorable to the non-moving party." *Baisden v. I'm Ready Prods., Inc.*, 693 F.3d 491, 498 (5th Cir. 2012); *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge."). A court must deny a motion for judgment as a matter of law "unless the facts and inferences point so strongly and overwhelmingly in the movant's favor that reasonable jurors could not reach a contrary conclusion." *Id.* (quoting *Flowers v. S. Reg'l Physician Servs. Inc.*, 247 F.3d 229, 235 (5th Cir. 2001)). In deciding a Rule 50(b) motion, even if the court would reach a different conclusion as the trier of fact, the court is "not free to reweigh the evidence or to re-evaluate credibility of witnesses." *Brown v. Kinney Shoe Corp.*, 237 F.3d 556, 564 (5th Cir. 2001) (quoting *Hiltgen v. Sumrall*, 47 F.3d 695, 699 (5th Cir. 1995)).

"The court may, on motion, grant a new trial on all or some of the issues." Fed. R. Civ. P. 59(a)(1). "A new trial may be granted, for example, if the district court finds the verdict is against the weight of the evidence, the damages awarded are excessive, the trial was unfair, or prejudicial error was committed in its course." *Smith v. Transworld Drilling Co.*, 773 F.2d 610, 613 (5th Cir. 1985). "While the court is to respect the jury's collective wisdom and must not simply substitute its opinion for the jury's, '[i]f the trial judge is not satisfied with the verdict of a jury, he has the right—and indeed the duty—to set the verdict aside and order a new trial.'" *Id.* (quoting C. Wright, Federal Courts 634 (4th ed. 1983)). In ruling on a motion for new trial, the jury's verdict may not be lightly set aside. *Ellis v. Weasler Eng'g, Inc.*, 258 F.3d 326, 343 (5th Cir. 2001).

## III. ANALYSIS

*A. Excessive Force Claim Against Defendant Kelly*

Defendants argue that Plaintiff presented no evidence at trial that Defendant "Kelly perpetrated, or was otherwise directly involved in the use of excessive force [Plaintiff] claims to have taken place on November 29, 2012." (Defs.' Mot., Dkt. 199, at 4). Defendants assert that although Plaintiff mentioned his allegation of excessive force against Defendant Kelly in his opening statement, he failed to mention it while on the witness stand and never obtained any inculpatory testimony against Kelly by other witnesses. (*Id.* at 4–5). Defendants also argue that while several TDCJ records were submitted to the jury, "including pictures, grievances, investigative reports and medical records, . . . for the purposes of the claims subject to this motion, [those records] do no more than establish that Plaintiff made previous self-serving accusations substantially mirroring his claims in this lawsuit." (*Id.* at 8). Finally, Defendants argue that Plaintiff has failed to prove a causal connection between his injuries and Kelly, meaning that he lacks standing, and has failed to present

6

evidence sufficient that a reasonable juror could conclude Kelly's entitlement to qualified immunity was overcome.[2] (*Id.* at 9).

While the Court agrees with Defendants that evidence Defendant Kelly used excessive force against Plaintiff on November 29, 2012, is limited, the Court disagrees that a reasonable jury could not conclude, based on the evidence, that he did.

It was undisputed at trial that Defendants Kosteck and Kelly were escorting Plaintiff Ostrander back to his cell after a shower on November 29, 2012. (Dkt. 199-1, at 306, Trial Tr. Day 2, 242:4–243:1). Evidence also demonstrated that Plaintiff was specifically under the control of Defendant Kelly while he was walking back to his cell and that Defendant Kosteck was walking in front of them. (*See, e.g.*, Dkt. 175-5, at 19 ("Officer Kelly secured offender Ostrander's left arm and began to escort him to his cell. Officer Kosteck was ahead of the escort and standing by cell 12-F-79.")). Other documentary and testimonial evidence, including a use of force video and testimony of some Defendants, indicated that Plaintiff sustained an injury to his face while being transported back to his cell. (*See, e.g.*, *id.* at 98). Plaintiff elicited detailed testimony about the circumstances surrounding the incident from Defendant Kosteck, including testimony that, at the time a supervisor arrived, Plaintiff's face was bleeding, he was "laying down on the ground face first," and Defendants Kosteck and Kelly were "restraining him." (Dkt. 199-1, at 307, Trial Tr. Day 2, 244:18–245:1). How exactly the injury happened came down to two very different versions of events. Defendants alleged at trial that while they were escorting Plaintiff back to his cell, he broke free from them and slammed his face into a wall. Plaintiff alleged instead that Defendant Kelly, who was escorting him at the time, slammed him into the wall and, together with Defendant Kosteck, beat him.

---

[2] The Court considers Defendants' argument regarding qualified immunity separately. *See infra* Part III.D.

Plaintiff submitted evidence sufficient for a reasonable jury to agree with his version of events. On direct examination, he was asked, "Defendants Preston, Kosteck, Kelly, and Kluck assaulted you using excessive force against you . . . only seven days later on November 29th, 2012 . . . is that correct?" (*Id.* at 126, 62:4-17). Plaintiff answered, "Absolutely. Yes, sir. That's what happened." (*Id.* at 62:18). Other documents were submitted to the jury as evidence showing that Plaintiff alleged in grievances that on November 29, 2012, "Officer Kosteck and Officer Kelly, after [Plaintiff's] shower was completed, repeatedly hit him in the face; dragged him into the cell; slammed him and then covered the event up by dragging him back onto the run." (Dkt. 175-5, at 8, 12).

In addition to this evidence supporting his version of events, Plaintiff identified evidence that undermined Defendants' version of events. For example, Plaintiff elicited testimony that the defendants involved failed to indicate that the November 29, 2012, incident involved self-harm in their initial excessive force reports, (Dkt. 199-1, at 564, Trial Tr. Day 3, at 135:18–140:6), even though Defendants' explanation for Plaintiff's injuries at trial was that they were self-inflicted. For example, on Defendant Kelly's Use of Force Report, which has a section for the TDCJ employee to "describe offender behavior, specify which offender(s) and whether it occurred <u>before</u> or <u>during</u> the use of force," Kelly did not mark "[a]ttempted suicide or self-mutilation." (Dkt. 175-5, at 28).

Defendants argue that Plaintiff's self-serving testimony and grievances are insufficient to support the jury's verdict. They cite no case law to support the argument that this evidence can or should be ignored. Further, in this case, nearly all testimony and evidence regarding what happened from the time Plaintiff left the shower to the time he ended up bleeding on the floor was based on the parties' versions of events and was arguably self-serving.[3] The ultimate conclusion of which

---

[3] Defendants assert that TDCJ officers who are not defendants in this action are "disinterested witnesses." The Court does not consider other TDCJ officers to be disinterested in litigation pending against their coworkers.

version of the facts to believe in such a case must be left to the jury, which is responsible for making credibility determinations. *See Reeves*, 530 U.S. at 150.

The Court finds that the evidence was sufficient for the jury to conclude that Defendant Kelly caused Plaintiff's injuries. While there was no video evidence that Defendant Kelly beat Plaintiff or slammed him into a wall, there was substantial evidence regarding the circumstances immediately before and after the incident. This evidence was sufficient for the jury to infer that Defendant Kelly was the cause of the injuries. *Gutierrez v. Excel Corp.*, 106 F.3d 683, 687 (5th Cir. 1997) ("Causation is a question of fact for the jury, and the jury has broad latitude to infer proximate cause from the evidence and circumstances surrounding an event."). The Court will therefore deny Defendants' motion with respect to the claim of excessive force against Defendant Kelly.

*B. Retaliation Claims Against Defendants Kosteck and Kelly*

Next, Defendants argue that Plaintiff failed to submit evidence sufficient to (1) prove that Defendants Kosteck and Kelly were retaliating against Plaintiff in violation of his First Amendment rights when they used excessive force on November 29, 2012, and (2) overcome Defendants' qualified immunity. (Defs.' Mot., Dkt. 199, at 6–9). Defendants argue that Plaintiff failed to establish "any element of a retaliation claim" against Defendants Kosteck or Kelly. (*Id.* at 6). They assert that Plaintiff failed to mention the claim in his own testimony and that, in response to Plaintiff's sole question to Defendant Kosteck regarding the claim, Defendant Kosteck denied the allegation. (*Id.* at 6–7). Defendant Kelly was not asked about the alleged retaliation. (*Id.* at 5).

"To prevail on a claim of retaliation, a prisoner must establish (1) a specific constitutional right, (2) the [prison official's] intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation." *Morris v. Powell*, 449 F.3d 682, 684 (5th Cir. 2006) (quoting *McDonald v. Steward*, 132 F.3d 225, 231 (5th Cir. 1998)). "The inmate must produce direct evidence of motivation or . . . allege a chronology of events from which retaliation may

plausibly be inferred." *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995) (internal quotation marks omitted). Evidence of causation must demonstrate that "but for the retaliatory motive the complained of incident . . . would not have occurred." *Id.*

Plaintiff submitted substantial evidence of his exercise of a specific constitutional right—his First Amendment right of access to the courts by filing litigation and grievances. (*See* Dkt. 175-1, at 1–78); *Woods*, 60 F.3d at 1164 (discussing an inmate's constitutional right of access to the courts). Plaintiff also submitted sufficient evidence of a retaliatory adverse act—the excessive force used by Defendants Kosteck and Kelly previously discussed by the Court. *See Morris*, 449 F.3d at 686 (holding that retaliation is actionable if it is capable of deterring a person of ordinary firmness from further exercising his constitutional rights). The Court therefore focuses its attention on the other two elements of Plaintiff's retaliation claim—intent and causation.

In his opening statement, Plaintiff argued that when Defendants Kosteck and Kelly were beating him on November 29, 2012, one of them said, "You going to file a grievance on me, Ostrander? You going to file a grievance on me too? You going to file a lawsuit on me?" (Dkt. 199-1, at 95, Trial Tr. Day 2, 31:6–12). But these specific allegations were absent from Plaintiff's testimony on the witness stand, and no evidence was submitted to the jury regarding the statements. Plaintiff also made general allegations that Defendants and other officers beat him up "to deter [him] from writing grievances" and would tell him as much while beating him. (*Id.*, at 97:3-13; Dkt. 175-1, at 1–4). But such allegations are not direct evidence of Defendants' Kosteck and Kelly's motivation for their use of excessive force.

At the very beginning of the use of force video, which commences immediately after Plaintiff alleges Defendants Kosteck and Kelly assaulted him while escorting him back from the shower, Plaintiff can be heard shouting that Defendants were not "going to stop [him] from filing

grievances." (Dkt. 199-1, at 322, Trial Tr. Day 2, 258:15-20). Again, these statements are not direct evidence of Defendants' motivation and instead could be attributed to Plaintiff's own conjecture.

Because the Court cannot identify any direct evidence that retaliation was the motivation behind Defendant Kosteck and Kelly's use of excessive force, it must evaluate whether Plaintiff provided sufficient evidence of a chronology of events from which reasonable jurors could infer retaliation. For the jurors to reasonably make such an inference, Plaintiff must have submitted evidence that (1) he was exercising his First Amendment right to file grievances and litigation leading up to the November 29, 2012, use of excessive force and (2) Defendants Kosteck and Kelly knew about that speech.

The evidence clearly supports that Plaintiff was exercising his constitutional right to file grievances and litigation leading up to November 29, 2012. First, Plaintiff testified that he had been successful in a prior federal civil rights lawsuit against TDCJ officers in 2000. (Dkt. 199-1, at 152, Trial Tr. Day 2, 88:9–16). Second, Plaintiff submitted as evidence the following grievances he filed while at the Hughes Unit in the months before the November 29, 2012 incident:

- Plaintiff's grievance filed July 5, 2012, against an unnamed correctional officer he said threatened him about filing grievances. (Dkt. 175-5, at 48–49).

- Plaintiff's appeal of the July 5, 2012, grievance, filed July 11, 2012, alleging that he was under duress and in fear for his life, and explaining that he never spoke with Defendant Kluck about the grievance and never refused to cooperate with an interview. (Dkt. 175-5, at 50–51).

- Plaintiff's grievance filed September 21, 2012, against Defendant Preston for retaliation, alleging that "I have been registering grievances concerning his staff threatening to assault me . . . as a method of retaliation for a lawsuit I had prevailed in against [TDCJ]." (Dkt. 175-1, at 1–2).

- Plaintiff's appeal of the September 21, 2012 grievance, filed October 4, 2012, alleging that Defendant Preston berated him for his grievance activities and that Defendant Preston's "boys" or "conspirators" assaulted him. (Dkt. 175-1, at 3–4).

- Plaintiff's grievance filed September 26, 2012, against Defendant Preston and other unidentified officers, alleging that Defendant Preston "conspired with 2-unit staff

11

members . . . to assault me without need or provocation as a method of retaliation for my peaceful litigation activities against [TDCJ] staff." (Dkt. 175, at 21–22).

- Plaintiff's grievance filed October 1, 2012, against a TDCJ officer who is not a defendant in this lawsuit, alleging that Plaintiff had been assaulted by other officers and that the named TDCJ officer had failed to obtain medical assistance. (Dkt. 174-1, at 39–40).

- Plaintiff's grievance filed October 10, 2012, against Defendants Taylor, Kelly and Kluck,[4] alleging that Defendants Taylor and Kelly had engaged in a "malicious cell search" in which they dumped his coffee down the toilet; that Defendant Taylor had made threatening comments regarding Plaintiffs filing of grievances against Defendant Preston and others; and that afterward, Defendant Taylor had filed a false disciplinary report against Plaintiff. (Dkt. 175-1, at 15–16).

- Plaintiff's grievance filed October 15, 2012, against Defendant Preston alleging that he conspired with Defendant Taylor to cover up a false disciplinary report and inaccurately report a use of force incident involving Plaintiff. (Dkt. 175-1, at 65–66).

- Plaintiff's appeals of his September 26, 2012, October 1, 2012, October 10, 2012, and October 15, 2012 grievances, all filed November 3, 2012. (Dkt. 175-1, at 17–18, 23–24, 41–42, 67–68).

In short, Plaintiff submitted evidence of filing numerous grievances against TDCJ officers at the Hughes Unit in the months leading up to November 29, 2012.

The jury also had sufficient evidence to infer that Defendants Kosteck and Kelly knew about some or all of these grievances. First, submitted with the grievances into evidence were records of some Defendants and other officers responding to Plaintiff's allegations. (*See, e.g.*, Dkt. 175-1, at 7 (Defendant Preston's response), 20 (Defendant Taylor's response), 45 (Defendant Yarborough's response)). Plaintiff also submitted testimony that Defendants would have known about his prior lawsuit and grievances. Plaintiff explained during his testimony that:

> Pursuant to policies that I read, what they do is I'll submit a grievance complaining about something, and then any officer's name that arise[s] in there [or] that appear[s] in my grievance, they'll get them to – they'll give them a copy of the grievance. They just send it to them. They don't call them out or anything. They have – they're supposed to read the grievance and file a written response to the grievance denying it.

---

[4] There was a fourth TDCJ officer named in the grievance who was not named as a defendant in this lawsuit.

12

(Dkt. 199-1, at 108, Trial Tr. Day 2, 44:9–16). Finally, while Defendant Preston—who was named in more than one of Plaintiff's grievances—was testifying, he admitted that each of the other defendants "were [his] officers" and agreed with Plaintiff that they were his direct subordinates. (*Id.*, at 43:18–14).

While there was no direct evidence of Defendant Kosteck or Kelly's knowledge of these grievances or Plaintiff's prior litigation, Defendant Kelly was specifically named in one grievance, and the jury could have reasonably inferred from the number of grievances and the number of officers who knew about them—including their supervisor, Defendant Preston—that Defendants Kosteck and Kelly were informed about Plaintiff's grievance activity prior to their excessive use of force on November 29, 2012.

Further, Defendants offered little testimony to contradict Plaintiff's allegations that their excessive force was motivated by retaliation. For example, they did not testify that they did not know about any of the past grievances or offer an alternative explanation for the use of force that resulted in Plaintiff being restrained on the floor outside his cell after his shower.[5]

In total, the chronology of events leading up to Defendant Kosteck and Kelly's use of excessive force on November 29, 2012, sufficiently supports an inference that the retaliation was the motive and cause of the excessive force. The Court therefore concludes that there was sufficient evidence for the jury to rule for Plaintiff on his claims of retaliation against Defendants Kosteck and Kelly.

*C. Retaliation Claims Against Defendants Preston and Kluck*

Defendants also argue that Plaintiff failed to submit sufficient evidence that Defendants Preston and Kluck's disciplinary charges were retaliatory. They assert that Plaintiff generally ignored

---

[5] Rather than allege such force was justified, Defendants alleged that there was no force and that Plaintiff's injuries were self-inflicted. Defendants Kosteck and Kelly did, however, offer an alternative explanation of their use of force after Defendant Ostrander was restrained on the way back to his cell from the shower—namely, that Plaintiff was not cooperating and refusing to stand, meaning certain force was required to return him to his cell.

13

the issue in both his own testimony and his cross-examination of each defendant. (Defs.' Mot., Dkt. 199, at 6). They again argue that the evidence is insufficient to overcome Defendants' qualified immunity.

Plaintiff's retaliation claim against Defendant Preston is related to a disciplinary report filed against him for possession of contraband that was initially filed by Defendant Taylor. Plaintiff submitted as evidence the disciplinary report. (Dkt. 175-2, at 2). The report indicates that a hearing was held on Defendant Taylor's disciplinary report on October 10, 2012, indicating that Plaintiff entered a plea of not guilty but was found guilty. (*Id.*). The report is signed by Defendant Preston, and, in the place for Plaintiff's signature, Preston appears to have written "handcuffed." (*Id.*).

Plaintiff's retaliation claim against Defendant Kluck relates to a disciplinary report Defendant Kluck filed against Plaintiff after the November 29, 2012 incident. Defendant Kluck was one of the officers responding to the incident after Plaintiff was secured on the ground by Defendants Kosteck and Kelly. The report explains:

> On 11-29-12 offender Ostrander was being escorted from the shower when he pulled away from staff and hit the wall with his face. Offender laid down and refused to walk back to his cell. I gave several orders to walk but Offender Ostrander refused. This caused a major use of force and all activities to stop. Offender Ostrander refused to release the hand restraints which caused chemical agents to be used and a force cell move team to be assembled.

(Dkt. 175-5, at 96). It is signed by Defendant Kluck.

First, as with the previous claim of retaliation, Plaintiff has provided sufficient evidence that he was exercising his constitutional right to file grievances and engaging in litigation leading up to the alleged retaliations. *See Morris*, 449 F.3d at 686. For the reasons detailed below, the Court concludes Plaintiff also provided sufficient evidence (1) of a retaliatory act taken by both Defendant Preston and Defendant Kluck through the disciplinary reports and (2) to allow a reasonable jury to infer that the primary motive for the disciplinary reports was retaliation.

As the Court already detailed, there was substantial evidence that Plaintiff filed numerous grievances leading up to the filing of the disciplinary reports. Both Defendant Preston and Kluck submitted written responses to some of Plaintiff's grievances, (*see, e.g.*, Dkt. 175-1, at 7 (Defendant Preston's response), 53 (Defendant Kluck's response)), meaning they were aware of at least some of the grievances Plaintiff filed. In addition, Plaintiff specifically testified that he attached the final judgment in his prior lawsuit to one of the grievances and that Defendant Preston shook the grievances and final judgment in his face. (Dkt. 199-1, at 156, Trial Tr. Day 2, 91:8–92:1).

Notably, with respect to the retaliation claims against Defendants Preston and Kluck, Defendants did offer evidence that the disciplinary reports were not filed for the primary purpose of retaliation, but for the reasons stated in the reports. For the claim against Defendant Preston, the evidence was largely based on the testimony of Defendants and their own recollections of the event submitted through TDCJ records. For the claim against Defendant Kluck, the jurors watched the video in which Defendant Kluck ordered Plaintiff—who was laying on the ground on his stomach with his hands hand-cuffed behind his back—to stand up and heard Plaintiff say he could not get up. For both claims, however, it was appropriate for the jury to weigh the credibility of the witnesses and weigh the evidence in determining the motivation for the disciplinary reports.

With respect to the disciplinary report signed by Defendant Preston, the jury could have inferred, based on the evidence, that Defendant Preston knew Plaintiff did not have contraband materials and signed the disciplinary report in retaliation for the numerous grievances Plaintiff filed against him and his staff. With respect to the disciplinary report signed by Defendant Kluck, after watching the video, the jury could have determined that it would have been very difficult or impossible for Plaintiff to comply with Defendant Kluck's instructions to stand up and concluded that Defendant Kluck's primary motive in filing the report was retaliation.

D. *Qualified Immunity*

Defendants, in conclusory fashion, argue that the evidence before the jury did not show to a legally sufficient degree that "Defendants engaged in conduct that was objective unreasonable" or that Defendants "violated a clearly established right of which a reasonable person would have known." (Dkt. 199, at 9). "Qualified immunity protects public officials from suit unless their conduct violates a clearly established constitutional right." *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008) (internal quotation marks omitted). To overcome a qualified immunity defense, a plaintiff must show that (1) the official violated a statutory or constitutional right, and (2) the right was "clearly established" at the time of the challenged conduct. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). A district court has discretion to decide which of the two prongs of qualified-immunity analysis to tackle first. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

At trial, Plaintiff and Defendants presented two different versions of events to the jury, and, as discussed above, Plaintiff submitted sufficient evidence for a reasonable jury to agree with his version of events. Namely, Plaintiff alleged that Defendant Kelly slammed him into the wall and then, together with Defendant Kosteck, beat him—including repeatedly hitting him in the face, which was bleeding, and dragging him—and that Defendants Kelly and Kostek retaliated against Plaintiff by assaulting him and Defendants Preston and Kluck retaliated against him by filing disciplinary reports against him. Because the Court concludes there was enough evidence for the jury to accept Plaintiff's version of events based on the jury's credibility determinations, it also concludes that the evidence was sufficient to show Defendants violated Plaintiff's constitutional rights. *See Morris*, 449 F.3d at 684. There is no question that needlessly[6] beating an inmate while walking him back to his cell is a violation of the inmate's constitutional rights. *Hudson v. McMillian*, 503 U.S. 1, 5

---

[6] While Defendants discuss in their motion considerations for determining whether force was needed, those considerations are not relevant here, where Defendants did not allege or provide any evidence that they needed to use force leading up to Plaintiff's initial injury and instead asserted that Plaintiff caused the injury himself.

(1992) ("[T]he unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment.").

The Court next turns to whether Plaintiff's constitutional rights were "clearly established" at the time of the challenged conduct. *See Harlow*, 457 U.S. at 818. "A Government official's conduct violates clearly established law when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'" *Ashcroft v. al–Kidd*, 563 U.S. 731 (2011) (alterations in original) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). The Supreme Court "does not require a case directly on point for a right to be clearly established," but "existing precedent must have placed the statutory or constitutional question beyond debate." *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (internal quotation marks omitted).

The Court therefore analyzes whether, in late 2012, a reasonable government official would have known that Defendants' action violated Plaintiff's rights. In its verdict, the jury found that Plaintiff proved Defendants' actions were objectively unreasonable in light of the facts and circumstances at the time and that Defendants therefore were not entitled to qualified immunity. (Dkt. 184). The legal landscape of 2012 supports the jury's verdict.

In *Cowart v. Erwin*, the Fifth Circuit stated:

> We have little difficulty concluding that in 2009, the time of the incident, it was well-established, in sufficiently similar situations, that officers may not "use gratuitous force against a prisoner who has already been subdued . . . [or] incapacitated." Reasonable officers had fair notice that such conduct under the circumstances violated Cowart's right to be free from excessive force.

837 F.3d 444, 454 – 55 (2016) (quoting *Skrtich v. Thornton*, 280 F.3d 1295, 1303 (11th Cir. 2002)).

The Fifth Circuit also has confirmed that the "law of this circuit is clearly established, and was so in 1990 when the instant disciplinary charges issued, that a prison official may not retaliate

against or harass an inmate for . . . complaining to a supervisor about a guard's misconduct." *Woods*, 60 F.3d at 1164; *Morris*, 449 F.3d at 684.

The Court therefore finds that the evidence before the jury was such that reasonable and impartial minds could have found that a reasonable person would have known that using excessive force and also assaulting a prisoner in retaliation for filing grievances were clear violations of Plaintiff's constitutional rights.

*E. Punitive Damages*

Finally, Defendants argue that Plaintiff failed to submit sufficient evidence to warrant a finding of punitive damages. As an initial matter, it is not clear that Defendants have properly preserved the issue of punitive damages on all claims. A party may not advance an argument in its Rule 50(b) motion that was not raised in its Rule 50(a) motion. *In re Isbell Records, Inc.*, 774 F.3d 859, 867 (5th Cir. 2014) ("Since a Rule 50(b) motion 'is technically only a renewal of the [Rule 50(a) motion for judgment as a matter of law] . . . it cannot assert a ground that was not included in the [original] motion.'"). A Rule 50(a) "motion must specify the judgment sought and the law and facts that entitle the movant to the judgment." Fed. R. Civ. P. 50(a).

At the close of Plaintiff's case-in-chief, Defendants moved for judgment as a matter of law but did not argue for judgment as a matter of law on four claims: an excessive force claim against Defendant Yarborough, a retaliation claim against Defendant Yarbrough, a retaliation claim against Defendant Taylor, and an excessive force claim against Defendant Kosteck. (Dkt. 199-1, at 545, Trial Tr. Day 3, at 115:1-5). They re-urged their motion for a judgment as a matter of law at the close of trial, again neither addressing those four claims nor addressing the issue of punitive damages generally. (*Id.*, at 144:8–145-11). The Court therefore concludes that Defendants failed to preserve the issue of whether Plaintiff provided sufficient evidentiary support for punitive damages with respect to the four claims they conceded should move forward at trial.

18

With respect to the remaining claims—each of which was already addressed in this order—although Defendants did not expressly discuss punitive damages in their initial motion for judgment as a matter of law, the Court considers Defendants' arguments that Plaintiff was not entitled to judgment on the underlying claim sufficient to preserve the issue for renewal.

"A jury may award punitive damages in a § 1983 action when an official's conduct is 'motivated by evil intent or demonstrates reckless or callous indifference to a person's constitutional rights.'" *Cowart*, 837 F.3d at 455. Defendants argue that Plaintiff failed to submit any evidence of malicious intent or recklessness. The Court disagrees. The jury's verdict on Plaintiff's excessive force claims permitted the jury to impose punitive damages. *See id.* at 455; *see also Jones v. Conner*, 233 F.3d 574 (5th Cir. 2000) (per curiam) (unpublished disposition) (explaining that the threshold standard for a finding of "constitutionally excessive force in violation of the Eighth Amendment . . . is substantially indistinguishable from the threshold standard for punitive damages."). Since this Court previously concluded that the evidence was sufficient as a matter of law to support the jury's findings of Eighth Amendment excessive-force liability and First Amendment retaliation liability, it follows that the jury had the discretion to award punitive damages. *Smith v. Wade*, 461 U.S. 30, 51–52 (1983).

## VI. CONCLUSION

For these reasons, the Court hereby **DENIES** Defendants' Motion for Judgment as a Matter of Law and Alternative Motion for a New Trial. (Dkt. 199).

**SIGNED** on October 4, 2017.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE